**Donald D. BARKDOLL, Plaintiff,**

v.

**H & W MOTOR EXPRESS COMPANY, Defendant.**

No. C91–0160.

United States District Court, N.D. Iowa, Cedar Rapids Division.

Feb. 4, 1993.

Mark John Seidl, Tom Riley Law Firm, Cedar Rapids, IA, for Donald D. Barkdoll.

Mark L. Zaiger & Theodore Collins, Shuttleworth & Ingersoll, Cedar Rapids, IA, for H· & W Motor Express.

## ORDER

MELLOY, Chief Judge.

This matter appears before the court on Defendant's resisted Motion For Summary Judgment. The following order and opinion grants the Defendant's motion.

### Background

Plaintiff was hired by the Defendant as a driver/dockman, a union position, on March 13, 1966. On March 21, 1966, the Plaintiff joined Teamsters Local Union No. 238. On February 24, 1971, the Defendant offered the Plaintiff a non-union position at its Cedar Rapids location. Plaintiff allegedly accepted the non-union position on the express condition that his pension would never fall below the pension provided to members of Teamsters Local Union No. 238. This "express condition" was never reduced to writing. Defendant allegedly made similar promises throughout the years to the Plaintiff. Now, after leaving the Defendant, the Plaintiff alleges that his pension is less than the pension he would have received had he remained a member of Teamsters Local Union No. 238.

Plaintiff's petition asserts breach of contract, detrimental reliance, and intentional

misrepresentation theories under Iowa law and seeks compensatory and punitive damages. On July 2, 1991, the Defendant removed the Plaintiff's action to this court. The Defendant then filed the summary judgment motion currently before the court arguing that the Plaintiff's state law claims are preempted by ERISA and that the Plaintiff has failed to state a claim for relief under ERISA.

## Summary Judgment

The Eighth Circuit recently articulated the following standards governing motions for summary judgment:

Under Rule 56(c) summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and "by affidavit or otherwise" designate "specific facts showing that there is a genuine issue for trial." *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir.1989) (quoting Fed.R.Civ.P. 56(e)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In designating specific facts, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment" because Rule 56(c) requires "that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). In order to determine which facts are material, courts should look to the substantive law in a dispute and identify the facts which are critical to the outcome. *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.

A dispute about a material fact is genuine if the evidence is such that a reasonable trier of fact could return a decision in favor of the party opposing summary judgment. *Id.* In performing the genuineness inquiry, trial courts should believe the evidence of the party opposing summary judgment and all justifiable inferences should be drawn in that party's favor. *Id.* at 255, 106 S.Ct. at 2513–14. A court is not "to weigh the evidence and determine the truth of the matter but [instead should] determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2510–11.

When a party opposing summary judgment fails its burden, summary judgment "may and should be granted" if the moving party otherwise satisfies the Rule 56(c) requirements. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. Summary judgment is not to be construed as a "disfavored procedural short-cut" but should be interpreted to accomplish its purpose of isolating and disposing of factually unsupported claims and defenses. *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2554–55. Yet, the Supreme Court also notes that trial courts should act with great caution and may deny summary judgment when it believes "the better course is to proceed to a full trial." *Anderson v. Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513–14.

*Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271–72 (8th Cir.1992) (parallel citations omitted).

The Defendant disputes Plaintiff's allegations that there was an oral promise to equalize the union and non-union pensions. However, for purposes of ruling upon Defendant's summary judgment motion, the court will assume that the trier of fact would find that such an oral promise had been made and that the Plaintiff relied upon that promise. Even assuming that such a promise had been made, the court concludes that the Defendant's motion for summary judgment should be granted.

## ERISA in General

The Employee Retirement Income Security Act ("ERISA") comprehensively regulates employee pension plans. Title 29 U.S.C. § 1002(2)(A) defines an employee "pension plan" as follows:

[An employee] ... "pension plan" mean[s] any plan, fund or program which ... is ... established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding

circumstances such plan, fund or program—

    (i) provides retirement income to employees, or

    (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.

29 U.S.C. § 1002(2)(A). The statute imposes participation, funding, and vesting requirements. The statute also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibilities. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 137–38, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (citing *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91, 103 S.Ct. 2890, 2897, 77 L.Ed.2d 490 (1983)). As part of this closely integrated regulatory scheme, the Congress included various safeguards to prevent abuse. Prominent among these safeguards is a provision of particular relevance to this case: 29 U.S.C. § 1144, ERISA's broad preemption provision. *Ingersoll–Rand,* 498 U.S. at 137–38, 111 S.Ct. at 482.

29 U.S.C. § 1144(a), the "preemption clause", preempts "any and all State laws in so far as they may now or hereafter *relate to* any employee benefit plan" covered by ERISA. *Id.* (emphasis added). The United States Supreme Court has consistently affirmed the broad preemptive scope of ERISA and the prohibition of even indirect state action relating to self-funded employee benefit plans. *See, e.g., FMC Corp. v. Holliday,* 498 U.S. 52, 56–57, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2388–89, 85 L.Ed.2d 728 (1985); *Shaw,* 463 U.S. at 98–99, 103 S.Ct. at 2900–01; *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 525, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981). In explaining the scope of the "relates to" language of the preemption clause, the Supreme Court has stated the following:

    A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan. Under this "broad commonsense meaning," a state law may "relate to" a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect. Pre-emption is also not precluded simply because a state law is consistent with ERISA's substantive requirements.

*Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct. at 483 (citations omitted).

An examination of recent Supreme Court cases illustrates the Court's expansive view of the "relates to" language of the preemption clause. In *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Court ruled that state common law contract and tort claims arising from an employer's termination of disability benefits were preempted by ERISA and removable from state to federal court. In *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Court went further, holding that ERISA preempts all state common law causes of action based on the alleged improper processing of a claim for benefits. In *Pilot Life* the plaintiff sought contract damages, tort damages for mental and emotional distress, and punitive damages, but failed to assert any ERISA causes of action. All of the plaintiff's claims were held preempted. In *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), the Court held that ERISA preempts a state law precluding employee welfare benefit plans from exercising subrogation rights on a claimant's tort recovery. And in *Ingersoll–Rand,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the Court held that a state common law cause of action based on an alleged wrongful discharge, which sought punitive damages and recovery for future lost wages and mental anguish rather than lost pension benefits, was also preempted by ERISA. In short, "ERISA's preemptive power remains virtually undefeated." *Maciosek v. Blue Cross & Blue Shield United,* 930 F.2d 536, 539 (7th Cir.1991).

In this case, the Plaintiff's efforts to avoid the clear preemptive mandate of ERISA are unpersuasive. The state law causes of action alleged by the Plaintiff are preempted under the Supreme Court's construction of ERISA.

## State Law Misrepresentations and ERISA

█ Plaintiff first argues that his state law fraudulent misrepresentation cause of action is not preempted by ERISA. The court can not agree. In *Slice v. Sons of Norway*, 978 F.2d 1045 (8th Cir.1992), the Eight Circuit recently held that state law misrepresentation claims are preempted by ERISA. *Id.* at 1047. The Eight Circuit is not alone, other circuit courts have also held that state law misrepresentation claims are preempted by ERISA. Indeed, the court is not aware of any circuit court which has held to the contrary.

In a case nearly identical to the case at bar, the Second Circuit held that an employee's attempt to enforce an oral promise to pay pension benefits allegedly made by his employer was preempted by ERISA. *Smith v. Dunham–Bush, Inc.*, 959 F.2d 6, 7, 12 (2nd Cir.1992). In *Smith,* plaintiff Smith was employed for thirty-three years by defendant Dunham–Bush's United Kingdom office. *Id.* at 7. In 1977, Smith was asked to transfer to Dunham–Bush's Connecticut affiliate. *Id.* Smith expressed concerns about the inferiority of the pension plan offered in Connecticut, but was assured by Dunham–Bush that he would receive a benefits package comparable to the package he would have received upon his retirement in the United Kingdom. *Id.* Smith understood that he would participate in the Connecticut pension plan, but that Dunham–Bush would supplement or "boost up" his benefits based on the United Kingdom package. *Id.* On the basis of this oral assurance, Smith agreed to relocate to Connecticut. *Id.* Smith, while continuing to work for Dunham–Bush, brought suit in state court to enforce the oral promise after Dunham–Bush did not live up to its end of the bargain. *Id.* Affirming the district court, the Second Circuit held that Smith's breach of contract and negligent misrepresentation claims were preempted by ERISA. *Id.* The following language from *Smith* seems particularly relevant to the case at bar:

> Although appellant attempts to fashion his complaint as one relating only to his pension benefits, and not to any plan, the existence of Dunham–Bush's pension plan would be a critical factor in establishing the extent of liability under state common law. In reality, his suit represents an attempt to supplement the plan's express provisions and secure an additional benefit. Smith's cause of action therefore relates not merely to his benefits, but to the essence of the plan itself. *See Felton v. Unisource Corp.*, 940 F.2d 503, 509 (9th Cir.1991).
>
> Although Smith may have been induced to relocate to the United States through Dunham–Bush's unenforceable oral assurance, that does not significantly distinguish him from other employees and plan participants seeking to supplement their pension plans with orally promised benefits. ERISA explicitly provides, in section 402(a), that all agreements relating to pension benefits must be in writing. ERISA § 402(a), 29 U.S.C. § 1102(a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a written instrument"). The writing requirement protects employees from having their benefits eroded by oral modifications to the plan.
>
> Furthermore, the writing requirement protects the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to persons not entitled to such under the express terms of the plan. The statutory language of § 1102(a)(1) is clear and concise and must be enforced as written. To hold otherwise would not only thwart congressional purpose and intent, but would afford less protection to employees and their beneficiaries. *Cefalu [v. B.F. Goodrich Co.]*, 871 F.2d 1290, 1296 (5th Cir.1989) (holding that ERISA precludes oral modification to written plan); compare *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120 (4th Cir. 1989) (ERISA preempts state law claims resting on allegations of plan's oral amendment).

*Id.* 959 F.2d at 10.

In *Sanson v. General Motors Corp.*, 966 F.2d 618 (11th Cir.1992), the Eleventh Circuit was faced with a disgruntled retiree, Sanson, who retired pursuant to General Motors' "early" retirement program after being told by General Motors that he would not be eligible to participate in General Motors'

"special" retirement program. *Id.* at 619. Based on that representation, Sanson retired under the provisions of General Motors' "early" retirement program. *Id.* Shortly after Sanson's early retirement, General Motors offered the "special" retirement program to certain eligible employees—which Sanson claimed he would have been a member of. *Id.* Sanson immediately contacted General Motors and demanded that his "early" retirement benefits be increased to the level of the "special" retirement program benefits. *Id.* General Motors refused and Sanson brought suit in state court seeking to recover the enhanced retirement benefits and compensatory and punitive damages based on General Motors' fraudulent misrepresentation. *Id.* After admitting that Sanson would prevail on his fraudulent misrepresentation claim in state court, the Eleventh Circuit held that Sanson's claim was preempted by ERISA since Sanson's state law claim "related to" an ERISA plan. *Id.* at 620–21. Specifically, the Eleventh Circuit compared Sanson's claim to the plaintiff's claim in *Ingersoll–Rand* and found as follows:

> The existence of a pension plan subject to ERISA is a critical factor in both cases. It was critical in establishing liability under [Texas's] ... wrongful discharge law in [Ingersoll–Rand].... In this case, the misrepresentation relates to Sanson's retirement benefits available under GM's special retirement plan. The measure of damages would be the amount of benefits Sanson would have received under the [special] retirement plan. Such a determination of damages demonstrates the relationship between the lawsuit and the special retirement plan.... Although the [Georgia] fraud statute does not involve the existence of a pension plan, the statute would not apply to this case without the existence of the retirement plan. (citations omitted).

*Id.* at 621.

Thus, this court must conclude that the Plaintiff's fraudulent misrepresentation claim is preempted by ERISA. Like the plaintiffs in *Dunham–Bush* and *Sanson,* the Plaintiff attempts to fashion his complaint as one relating only to his pension benefits, and not to the Defendants's ERISA plan. However, the existence of a pension plan would be a critical factor in establishing the extent of liability under Iowa's common law. Indeed, the Plaintiff's petition "demands judgment against the Defendant for damages in an amount equalling the difference between the pension Plaintiff was promised and the pension Plaintiff is receiving...." Plaintiff's Petition at 4. Thus, in reality, the Plaintiff's suit represents an attempt to supplement the plan's express provisions and secure additional benefits for himself. Plaintiff's fraudulent misrepresentation claim, therefore, goes to the essence of an ERISA pension plan and, as a consequence, is preempted by ERISA. *See Felton v. Unisource Corp.,* 940 F.2d 503, 509 (9th Cir.1991) (when the existence of a pension plan is a critical factor in establishing liability under a state law, the state cause of action goes to the essence of the pension plan itself) (citing *Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct. at 483).

In his brief, the Plaintiff relies quite heavily on *Greenblatt v. Budd Co.,* 666 F.Supp. 735 (E.D.Pa.1987), and *Greenblatt's* progeny. Having thoroughly reviewed *Greenblatt,* this court, like the Seventh Circuit, concludes that *Greenblatt* is not sound—especially in light of the Supreme Court's ruling in *Ingersoll–Rand.* *See Lister v. Stark,* 890 F.2d 941, 945 (7th Cir.1989), *cert. denied,* 498 U.S. 1011, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990) (Seventh Circuit declines to follow *Greenblatt* ). Indeed, every case cited by the Plaintiff in support of his argument predates the Supreme Court's decision in *Ingersoll–Rand.* As a result, this court concludes that the cases cited by the Plaintiff are not reflective of the Supreme Court's recent construction of the "relates to" language in ERISA's preemption clause.

Therefore, this court finds that the Plaintiff's state law fraudulent misrepresentation claim is preempted by ERISA.

### State Law Breach of Contract and ERISA

■ Plaintiff's second state law cause of action alleges that the Defendant's failure to maintain the appropriate level of retirement benefits breached the employment contract between Plaintiff and the Defendant. Like

the Plaintiff's fraudulent misrepresentation claim, the Plaintiff's breach of contract claim is preempted by ERISA since the breach of contract claim relates to an ERISA plan. *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6 (2nd Cir.1992), as discussed above, disposes of the Plaintiff's breach of contract claim as well since the existence of an ERISA pension plan would be a critical factor in establishing the extent of the Defendant's liability under a state breach of contract claim. *See also Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290 (5th Cir.1989) (breach of contract claim, premised on the fact that certain benefits were promised but not incorporated into to an ERISA plan, preempted since a damages computation would have to refer to an ERISA pension plan. *Id.* at 1294.); *Anderson v. John Morrell & Co.,* 830 F.2d 872 (8th Cir.1987) (breach of contract claim, based on an oral promise to equalize non-union benefits with union benefits, preempted by ERISA). Even the cases cited by the Plaintiff recognize that a state law breach of contract claim is preempted by ERISA. *See, e.g., Sandler v. New York News Inc.,* 721 F.Supp. 506 (S.D.N.Y.1989) ("The contract theory relied upon by the plaintiff thus 'provide[s] an alternative cause of action to employees to collect benefits protected by ERISA,' . . . and so falls rather squarely into one of the classes of actions that [are] . . . preempted by ERISA. . . ." *Id.* at 512.)

Thus, this court concludes that the Plaintiff's state law breach of contract claim is preempted by ERISA.

### State Law Detrimental Reliance, and ERISA

■ Finally, the Plaintiff argues that his state law detrimental reliance cause of action is not preempted by ERISA. Again, the court can not agree. Like the other claims, the existence of an ERISA pension plan

would be a critical factor in establishing the extent of the Defendant's liability under a state detrimental reliance claim. Thus, this court concludes that the Plaintiff's detrimental reliance claim is preempted by ERISA.

### A Recognizable ERISA Claim?

■ Plaintiff argues alternatively that even if his state law claims are preempted by ERISA, the court should recognize his claims under ERISA. More specifically, the Plaintiff wants the court to fashion federal common law to enforce ERISA's provisions. Since the Court of Appeals for the Eighth Circuit has lent its support to such a proposition, the court will endeavor to consider whether there is a federal common law remedy.[1] *Slice v. Sons of Norway,* 978 F.2d 1045, 1046 (8th Cir.1992) (court should consider whether federal common law might apply if all the claimant's state law causes of action are preempted).

At the outset the court notes that some courts have found that the federal common law does provide a remedy for the type of claims asserted by the Plaintiff on the theory that a wrongdoer should never benefit from his own misrepresentations. For example, in *Black v. TIC Inv. Corp.,* 900 F.2d 112 (7th Cir.1990) the Seventh Circuit concluded: "There is no reason for the employer who misled its employee to be allowed to profit from the misrepresentation." *Id.* at 115. However, the Seventh Circuit went on to explicitly limit its holding to single employer ERISA welfare benefit plans. *Id.*

Conversely, some courts have held that oral representations, even if patently false, that modify the terms of a written ERISA pension plan are unenforceable. Accordingly, these courts refuse to recognize the types of claims asserted by the Plaintiff. This

---

1. The Eighth Circuit first explained its support for the creation of a body of federal common law in ERISA cases in *Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344 (8th Cir.1980):

    The legislative history of the Act demonstrates that in order to fill the gaps left by ERISA's express provisions, Congress "intended that a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans," 120 Cong.Rec.

29942 (1974) (remarks of Senator Javits), in much the same way as the federal courts have long fashioned federal common law under section 301 of the Labor Management Relations Act of 1974. We might, therefore, seek to discern and apply "federal" principles in the decision of this case.

*Id.* at 1351 (citations omitted).

The Eighth Circuit later restated this view in *Anderson v. John Morrell & Co.,* 830 F.2d 872, 877 (8th Cir.1987).

court believes that the latter rule is more sound, and, as a result, concludes that the Plaintiff has failed to state a recognizable federal common law claim.

The Court of Appeals for the Eleventh Circuit, in *Nachwalter v. Christie*, 805 F.2d 956 (11th Cir.1986), was one of the first circuits to address the type of claims asserted by the Plaintiff. In *Nachwalter*, the Eleventh Circuit was asked to employ the doctrine of estoppel to enforce an oral agreement that had the effect of modifying the written terms of an employee pension plan. The Eleventh Circuit declined to do so and articulated the following passage in support of its conclusion:

> A central policy goal of ERISA is to protect the interests of employees and their beneficiaries in employee benefit plans. This goal would be undermined if we permitted oral modifications of ERISA plans because employees would be unable to rely on these plans if their expected retirement benefits could be radically affected by funds dispersed to other employees pursuant to oral agreements. This problem would be exacerbated by the fact that these oral agreements often would be made many years before any attempt to enforce them.

*Id.* at 960 (citations omitted).

The Eleventh Circuit has reaffirmed its decision in *Nachwalter* on several occasions. *See, e.g., National Cos. Health Ben. Plan v. St. Joseph's Hosp., Inc.*, 929 F.2d 1558 (11th Cir.1991); *Alday v. Container Corp. of America*, 906 F.2d 660 (11th Cir.), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1990); *but see Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285 (11th Cir.), *cert. denied*, 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990) (oral representations could be used to explain an ambiguous clause in an ERISA employee welfare benefits plan.). Other circuits have followed *Nachwalter*, relying mainly on the writing requirement and the concern for actuarial soundness in pension plans. *See, e.g., Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1163–64 (3rd Cir.1990) (reliance on writing requirement); *Degan v. Ford Motor Co.*, 869 F.2d 889 (5th Cir.1989) (reliance on both writing requirement and actuarial soundness); *Cleary v. Graphic Communications Int'l Union Supplemental Retirement & Disability Fund*, 841 F.2d 444, 447–48 (1st Cir. 1988) (actuarial soundness).

Another leading case on this issue is *Straub v. Western Union Tel. Co.*, 851 F.2d 1262 (10th Cir.1988). In *Straub*, an employee, Straub, brought an action against Western Union Telegraph for failure to inform him that a transfer from Western Union Telegraph to Western Union Space Communications, Western Union Telegraph's parent company, could affect his pension plan. *Id.* at 1263. Western Union Telegraph's pension plan calculated pension benefits using a 1.3 percent factor while Western Union Space Communications only used a 1.0 percent factor. *Id.* Straub brought an action in New Mexico state court asserting a breach of contract claim against Western Union Telegraph for not using the 1.3 percent factor (although Straub was then employed by Western Union Space Communications, Western Union Telegraph still managed Straub's pension fund), and a negligent misrepresentation claim for Western Union Telegraph's failure to inform him that his pension benefits might be affected by his transfer from Western Union Telegraph to Western Union Space Communications. *Id.* Straub did not assert a claim under ERISA. *Id.* Western Union Telegraph removed the action to the United States District Court for the District of New Mexico. *Id.* The district court found, and the Tenth Circuit affirmed, that Straub's claims were preempted by ERISA and that Straub failed to state a claim under ERISA. *Id.* The Tenth Circuit grounded its decision on *Nachwalter*. *Id.*

In the case at bar, the Plaintiff can only succeed if the oral representations made to him can modify the terms of his ERISA pension plan. In light of *Straub* and *Nachwalter*, the court concludes that such a result is foreclosed by ERISA's prohibition against oral modifications to ERISA pension plans. 29 U.S.C. § 1102(a)(1); *see Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 660 (8th Cir.), *reh'g en banc denied*, 1992 U.S.App.LEXIS 33376 (8th Cir.1992) (ERISA does not permit oral modifications to

ERISA plans); *Henglein v. Informal Plan For Plant Shutdown Benefits For Salaried Employees,* 974 F.2d 391, 400 (3rd Cir.1992); *Confer v. Custom Engineering Co.,* 952 F.2d 41, 43 (3rd Cir.1991); *Frank v. Colt Indus., Inc.,* 910 F.2d 90, 98 (3rd Cir.1990); *Dardaganis v. Grace Capital, Inc.,* 889 F.2d 1237, 1241 (2d Cir.1989); *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1296, 1297 n. 44 (5th Cir.1989); *Cleary v. Graphic Communications Int'l Union Supplemental Retirement and Disability Fund,* 841 F.2d 444, 447–48 (1st Cir.1988).

Finally, in his brief, the Plaintiff cites *Monson v. Century Mfg. Co.,* 739 F.2d 1293 (8th Cir.1984) as support for his argument that his claims are recognizable under ERISA. The facts of *Monson* reveal Monson and 600 other current and former employees of Century Manufacturing were promised certain benefits pursuant to a written ERISA pension plan and a non-ERISA profit sharing plan. The district court held, and the Eight Circuit affirmed, that Monson's detrimental reliance claim and fraudulent misrepresentation claim could lead to a recovery as against the non-ERISA profit sharing plan. However, it is unclear whether the Eighth Circuit actually dealt with Monson's detrimental reliance and fraudulent misrepresentation claim as against the ERISA pension plan. Indeed, a district court in the Eastern District of Missouri, after reviewing the original district court opinion in *Monson,* concluded that the Eight Circuit only held that Monson's detrimental reliance and fraudulent misrepresentation claims as against the non-ERISA profit sharing plan were actionable. *Hollenbeck v. Falstaff Brewing Corp.,* 605 F.Supp. 421, 435–36 (E.D.Mo.1984), *aff'd,* 780 F.2d 20 (8th Cir. 1985). The *Hollenbeck* court went further and found that the Eight Circuit did not seem to endorse Monson's fraudulent misrepresentation and detrimental reliance claim as against the ERISA pension plan. *Id.* 605 F.Supp. at 436.

While this court is no position to refute or endorse the findings in *Hollenbeck,* the *Hollenbeck* opinion highlights the ambiguities in the *Monson* opinion. For that reason, this court is convinced that *Farley* is more reflective of the Eight Circuit's position on ERISA's prohibition against oral modifications to ERISA pension plans.

Therefore, this court finds that the Plaintiff has failed to state a claim for relief under ERISA.

### Punitive Damages Under ERISA

Plaintiff's petition also prays for punitive damages. Since this court has concluded that the Plaintiff's claims are preempted by ERISA, and that the Plaintiff has failed to state a claim for relief under ERISA, the court need not address the punitive damages issue in any great detail, except to say that several courts have held that punitive damages are not available under ERISA. *See, e.g., Harsch v. Eisenberg,* 956 F.2d 651, 660–61 (7th Cir.), *cert. denied, Bihler v. Eisenberg,* —— U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); *Pane v. RCA Corp.,* 868 F.2d 631, 635 n. 2 (3rd Cir.1989); *Sage v. Automation, Inc. Pension Plan & Trust,* 845 F.2d 885, 888 n. 2 (10th Cir.1988); *Bishop v. Osborn Transp., Inc.,* 838 F.2d 1173, 1173–74 (11th Cir.), *cert. denied,* 488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1462–64 (5th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987); *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1216 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981).

### Jury Trials Under ERISA

Again, since the court has already concluded that the Plaintiff's current petition does not state a claim for relief under ERISA, the court will not spend a great deal of time discussing jury trials under ERISA, except to note that jury trials are generally not available under ERISA. *Kirk v. Provident Life & Accident Ins. Co.,* 942 F.2d 504, 506 (8th Cir.1991).

### ORDER

Accordingly, It Is Ordered:

1. Defendant's Motion For Summary Judgment is granted.

2. Plaintiff's petition (complaint) is dismissed in its entirety.

3. Defendant's Motion For Leave To Amend Final Pre–Trial Order is denied as moot.

Done and Ordered.