Mike THRAILKILL, et al., Plaintiffs,

v.

AMSTED INDUSTRIES INC.,
et al., Defendants.

No. 99–4244–CV–C–5.

United States District Court,
W.D. Missouri,
Central Division.

May 31, 2000.

**1130**

Angela K. Green, Niewald, Waldeck & Brown, P.C., Kansas City, MO, James B. Rice, Jr., Sedalia, MO, Julie J. Gibson, Niewald, Waldeck & Brown, P.C., Kansas City, MO, Michael E. Waldeck, Niewald, Waldeck & Brown, P.C., Kansas City, MO, for Mike Thrailkill, individually and on behalf of all others similarly situated, plaintiff.

Richard N. Bien, Lathrop & Gage, L.C., Kansas City, MO, Wilber H. Boise, McDermott Will & Emery, Chicago, IL, for Amsted Industries, Inc., defendant.

## MEMORANDUM AND ORDER

LAUGHREY, District Judge.

Plaintiffs, Mike Thrailkill and Donald Teasdale, are former employees of Defendant the MacWhyte Company ("MacWhyte"). Plaintiffs brought this suit on behalf of themselves and others similarly situated, alleging that MacWhyte and other Defendants[1] enticed them into accepting lower wages in exchange for benefits under the Employee Stock Ownership Plan ("ESOP"). Plaintiffs have asserted various state law claims as well a claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. Pending before the Court is Defendants' Motion to Dismiss. Defendants assert that ERISA preempts Plaintiffs' state law claims. Also pending is Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint.

Plaintiffs seek leave to file a Second Amended Class Action Complaint that would alter the relief they seek for their state law claims.[2] The motion to amend was filed after Defendants' motion to dismiss. Defendants oppose this amendment on the grounds of futility, and have asked the Court either to deny leave to amend or to grant leave to amend and subsequently dismiss the state law claims as preempted by ERISA. Rather than addressing the preemption issue twice, once when deciding the motion to amend and again when deciding the motion to dismiss, the Court will grant the motion to amend and proceed to consider whether the amended state law claims are preempted by ERISA.

### I. *Legal Standard*

In considering a motion to dismiss on the pleadings based on lack of subject matter jurisdiction or failure to state a claim for which relief can be granted, the "complaint must be liberally construed in the light most favorable to the plaintiff." *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir.1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The court must assume that "well pleaded factual allegations in the complaint are true." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990) (citing *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)). At the same time, the Court will not "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott*, 901 F.2d at 1488 (*citing Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987)).

### II. *Factual Background*

Plaintiffs' Second Amended Complaint asserts the following facts. Defendant

---

1. Other Defendants include Amstead Industries Inc., Amstead's ESOP, and Matthew J. Hower (the administrator of the ESOP), Broderick & Bascom Division of MacWhyte Company Minimum Retirement Security Plan for Hourly Employees, and Amsted MRS Plan 005.

2. The Second Amended Complaint also changes the names of certain Defendants and adds an alternative factual allegation about the ERISA claim. Defendants do not oppose either of these amendments.

Amsted Industries Inc. ("Amsted") is an industrial manufacturer serving railroad, construction, and industrial markets. MacWhyte is an affiliate of Amsted, and manufactures wire rope products used in various industrial operations. MacWhyte operated a manufacturing plant in Sedalia, Missouri, known as the Broderick & Bascom Division of MacWhyte.

On October 1, 1984, an ESOP benefit was established as the primary source of retirement benefits for employees of Amsted and its affiliates. All non-union MacWhyte employees were participants in the ESOP. Participants received share allocations of up to 25 percent of their annual salaries for the year, making the ESOP plan appear to be a valuable benefit.

In the late 1990s, MacWhyte hired many new workers for the Sedalia plant. As a hiring tool, MacWhyte featured its ESOP as a reason why employees should work at the Sedalia plant. MacWhyte explained that while it paid lower wages than comparable employers, its benefits package brought total compensation above what other employers were paying. MacWhyte and Amsted promised Plaintiffs that they would be able to participate in ESOP and accumulate valuable retirement benefits. Defendants promised that Plaintiffs would have the opportunity to work until their benefits fully vested. Although Plaintiffs could have earned higher wages elsewhere, they elected to work at the Sedalia facility because of the promise of ESOP benefits.

While making these representations to Plaintiffs, MacWhite and Amsted were soliciting and negotiating the sale of the entire Sedalia plant, the MacWhyte warehouses, and customer service centers. The sale would result in termination of the ESOP before Plaintiffs' benefits had vested. Defendants failed to disclose these facts to Plaintiffs.

On May 13, 1999, MacWhyte sold the company to the Wire Rope Corporation of America ("WireCo."). Shortly before the sale became effective, MacWhyte and Amsted terminated Plaintiffs. Plaintiffs were told that they could no longer participate in ESOP and that their nonvested account balances would be forfeited. They were also told that no ESOP shares would be allocated for the period between October 1, 1998, and May 13, 1999. WireCo rehired many of MacWhyte's employees, but it did not offer an ESOP plan or any similar benefits.

Plaintiffs' Complaint lists several claims, most of which arise under Missouri common law. The claims are as follows: Count I—Violation of ERISA; Count II—Negligent and/or Intentional Misrepresentation; Count III—Equitable and/or Promissory Estoppel; Count IV—Fraudulent Inducement; and Count V—Breach of Good Faith and Fair Dealing. As damages for the state law claims, Plaintiffs seek lost wages, punitive damages, and any other damages available under Missouri law.

### III. *Discussion*

#### A. ERISA's Preemption Clause

ERISA was designed to "establish pension plan regulation as exclusively a federal concern." *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). Therefore, ERISA preempts state laws that "relate to" any employee benefit plan described in the statute. 29 U.S.C. § 1144(a).[3] This statutory language is far from clear, and the scope of ERISA "relat[ing] to" preemption has "troubled the courts of appeals and the Supreme Court." *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.,* 154 F.3d 812, 818 (8th Cir.1998).

Preemption analysis turns on congressional intent. *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654–55, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); *accord*

---

**3.** State laws regulating certain kinds of plans, such as insurance, are exempt from this provision. *See* 29 U.S.C. § 1144(b). However, there is no contention that any of these exemptions applies in this case.

*Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (Congressional intent is the "ultimate touchtone" of preemption analysis). Congress's intent in passing ERISA was to protect participants in employee benefits plans. 29 U.S.C. § 1001(b) (stating purpose of statute).

■ In ERISA cases, courts must begin "with the starting presumption that Congress does not intend to supplant state law." *Travelers,* 514 U.S. at 654, 115 S.Ct. 1671. The Court must also assume that Congress did not "intend to bar state action in fields of traditional state regulation or historic police powers." *Id.* at 655, 115 S.Ct. 1671. However, the Supreme Court has "long acknowledged that ERISA's preemption provision is clearly expansive." *California Div. of Labor Standards Enforcement v. Dillingham Constr.,* 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (*quoting Travelers,* 514 U.S. at 655, 115 S.Ct. 1671). The preemption clause has "a broad scope, and an expansive sweep, and [is] broadly worded, deliberately expansive, and conspicuous for its breadth." *Id.* Nevertheless, "[i]f 'relate to' were taken to extend to the furthest stretch of indeterminacy, then for all practical purposes preemption would never run its course, for '[r]eally, universally, relations stop nowhere.' " *Travelers,* 514 U.S. at 655, 115 S.Ct. 1671. Thus, "[t]he mere mention of an ERISA plan in a complaint is not, in and of itself, sufficient to warrant a finding that state law relates to a plan." *In Home Health Inc. v. Prudential Ins. Co. of Am.,* 101 F.3d 600, 604 (8th Cir.1996).

■ "Congress did not define what it meant by state laws that 'relate to' an ERISA benefit plan anywhere in the statute." *National Park,* 154 F.3d at 819. However, the term should be given its broad, common sense meaning. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). In *Shaw,* the Supreme Court developed a two-prong analysis for determining whether state law "relates to" an ERISA plan. 463 U.S. at 96–97, 103 S.Ct. 2890. A law relates to an employee benefit plan if it either has a "connection with" or makes "reference to" such a plan. *Id.; accord Prudential,* 154 F.3d at 819 (noting that this two-prong analysis is still applied by the Supreme Court). ERISA's preemption clause "is not limited to state laws specifically designed to affect employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

**B. Whether Plaintiffs' State Law Claims Have a Prohibited "Connection With" an ERISA Plan**

In this case, Plaintiffs argue that ERISA should not preempt their common law claims related to the time period before they accepted employment with the Defendants.[4] Plaintiffs allege that Defendants lured them into accepting employment at lower wages by promising them benefits under an ERISA plan. Defendants allegedly knew at that time that Plaintiffs' benefits under that plan would never vest, because the company was going to be sold. Defendants' wrongful conduct allegedly convinced Plaintiffs to accept employment at the Sedalia plant and to forego higher paying employment elsewhere, and Plaintiffs therefore seek lost wages as compensation.

Neither party asserts that the common law invoked by Plaintiffs makes "reference to" employee benefit plans. Missouri's common law on misrepresentation is of "general application," and "does not actually or implicitly refer to ERISA plans." *Wilson v. Zoellner,* 114 F.3d 713, 717 (8th Cir.1997) (*quoting Home Health,* 101 F.3d at 602, n. 2). The same is true of Missouri's common law on estoppel, fraudulent inducement, and good faith. Therefore, the issue for this Court to decide is whether this state law has a "connection with" the ESOP plan.

---

4. Plaintiffs concede that ERISA bars their common law claims related to the termination of the ESOP when the plant was sold. Those claims will therefore be dismissed.

The Eighth Circuit has defined several factors to be considered when determining whether a state law has a connection with an ERISA plan:

(1) Whether the state law negates an ERISA plan provision;

(2) Whether the state law affects relations between primary ERISA entities;

(3) Whether the state law impacts the structure of ERISA plans;

(4) Whether the state law impacts the administration of ERISA plans;

(5) Whether the state law has an economic impact on ERISA plans;

(6) Whether preemption of the state law is consistent with other ERISA provisions; and

(7) Whether the state law is an exercise of traditional state power.

*Arkansas Blue Cross and Blue Shield v. St. Mary's Hosp., Inc.*, 947 F.2d 1341, 1344–45 (8th Cir.1991) (citations omitted). In conducting this analysis, "[t]he court must still look to the totality of the state [law's] impact on the plan—both how many of the factors favor preemption and how heavily each individual factor favors preemption are relevant." *Id.* at 1345.

To the extent that Plaintiffs allege that state law required the Defendants to explain how the sale would effect their ESOP benefits, their claim is preempted by ERISA. *Shea v. Esensten*, 107 F.3d 625, 627 (8th Cir.), *cert. denied*, 522 U.S. 914, 118 S.Ct. 297, 139 L.Ed.2d 229 (1997). Imposing a state law disclosure requirement on employers would affect relations between employers and employees, as well as the administration of ERISA plans. *St. Mary's*, 947 F.2d at 1344–45. ERISA's goal of national uniformity would be thwarted if plan administrators were required to tailor their disclosure policies to various state laws. *Shea*, 107 F.3d at 627. ERISA provides the exclusive remedy when employers fail to disclose required information.

Giving Plaintiff's Second Amended Complaint a liberal construction, however, it also asserts that Defendants violated state law by failing to disclose that the Sedalia plant would soon be sold. If this information had been provided, then Plaintiffs would have been able to make an informed decision about their eligibility for ESOP benefits. Applying the *St. Mary's* factors indicates that ERISA does not preempt these state law claims.

First, these state claims do not negate any provision of the ESOP or challenge the structure of the plan. Plaintiffs are not suing for plan benefits or challenging any provision of the ESOP. Instead, they allege that Defendants withheld information about the imminent sale of the company and therefore prevented them from making an informed analysis about whether they would be eligible for plan benefits. This assertion does not negate any provision of the ERISA plan itself. *See In Home Health*, 101 F.3d at 605 (holding that state claim did not negate ERISA plan provisions where plaintiffs did not seek plan benefits or challenge the plan's structure).

Although Defendants correctly note that ERISA has been found to preempt state law claims challenging specific provisions of employee benefit plans, Plaintiffs have made no such challenge here. *See Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1218 (5th Cir.1992) (holding that ERISA preempted state law claim that employer wrongfully amended ERISA plan); *accord Childers v. Northwest Airlines, Inc.*, 688 F.Supp. 1357, 1364 (D.Minn.1988). In *Childers*, an employer promised to establish an employee stock ownership plan if the union agreed to a fifteen percent wage reduction. The union accepted the deal, but the plaintiffs were subsequently declared ineligible for the ESOP after a change in their union affiliation. *Id.* at 1359. Plaintiffs asserted claims of fraud and breach of contract against their employer. The district court noted that the "essence" of Plaintiffs claim was that their employer "breached its contract and fraudulently induced them to agree to wage

concessions by failing to adopt plan requirements that would ensure equal protection in the ESOPs by all ... employees." *Id.* at 1364. Because addressing the claim would consequently require a detailed examination of the ERISA plan at issue, the court found that the claim was "related to" ERISA in the common sense meaning of that term. *Id. Childers* is quite different from this case. Unlike the claim at issue in *Childers*, Plaintiffs' claims do not assert that the ESOP should have been written differently. Rather, Plaintiffs merely assert that they should have been informed that the duration of their employment with Amsted would be quite limited.

Second, Plaintiffs state law claims would have a limited effect on relations among primary ERISA entities. Primary ERISA entities are "the employer, the plan, the plan fiduciaries, and the beneficiaries." *St. Mary's*, 947 F.2d at 1346. As noted above, the state law claims would not affect the ESOP itself. However, Plaintiffs have brought suit against their former employer.[5] Because these state law claims are brought against a former employer, they would be expected to affect a "primary ERISA entity."

Third, Plaintiffs' remaining state law claims should not impact the administration of the ESOP. *Wilson*, 114 F.3d at 719. In *Wilson*, the plaintiff sued an insurance salesman for misrepresentation. The salesman had sold Wilson's employer a policy designed to compensate employees for work-related injuries. *Id.* at 716. After being injured on the job, being denied coverage, and losing his suit against the insurance company, Wilson sued the agent for misrepresentation. *Id.* In considering whether the state law claim would have an impact on plan administration, the Eighth Circuit noted that "Wilson's action is

premised on alleged misrepresentations by [the agent] *prior to* the existence of the ERISA plan." *Id.* at 719 (emphasis added). The Court concluded that recovery for "pre-plan tortious conduct," therefore would not affect the plan. *Id.; accord Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1505 (9th Cir.1985) (holding that ERISA did not preempt claim asserting unfair negotiation of employment contract). This case is similar to *Wilson*, because Plaintiffs do not challenge the administration of the ESOP plan itself, but rather bring state law claims challenging acts that occurred before they were even plan beneficiaries. The activities related to hiring that are in issue with this case cannot be said to affect the administration of the ESOP.

Further, like the plaintiff in *Wilson*, Plaintiffs do not seek plan benefits. Defendants correctly note that ERISA has been held to preempt state law claims asserting that plan benefits were improperly denied. *Pilot Life*, 481 U.S. at 48, 107 S.Ct. 1549 (holding that ERISA preempts common law claims alleging improper administration of ERISA plans); *Mathis v. American Group Life Ins. Co.*, 873 F.Supp. 1348, 1353 (E.D.Mo.1994) (holding that ERISA preempts state law claims based on improper processing of benefits claims). Defendants argue that this case is similar to *Barkdoll v. H & W Motor Express Co.*, 820 F.Supp. 410 (N.D.Iowa 1993). In *Barkdoll*, the plaintiff accepted a nonunion position on the condition that his pension would not fall below that of Teamsters Union employees. When this condition was violated, plaintiff sued his employer for misrepresentation, seeking pension benefits as damages. The Court held that because the plaintiff sought plan benefits as damages, his cause of action depended on the existence of an ERISA

---

5. The Eighth Circuit has held that ERISA does not preempt suits by beneficiaries against third parties who provide services to ERISA plans, such as insurance salesmen and physicians. *See Wilson*, 114 F.3d at 718 (holding that ERISA did not preempt lawsuit against insurance salesman who misrepresen-

ted the scope of an insurance policy his company provided to an ERISA plan); *Shea v. Esensten*, 208 F.3d 712, 2000 WL 336674 at *5 (8th Cir. March 31, 2000) (allowing suit against physicians who provided services to an employee under a contract with an ERISA plan).

plan. *Id.* at 415. By contrast, in this case, the Plaintiffs do not seek benefits as damages, but instead have asked for the wages they would have received if they had sought employment elsewhere. Their state law claims therefore should not affect the administration of the ESOP. *See Perry v. P\*I\*E Nationwide, Inc.,* 872 F.2d 157, 162 (6th Cir.1989) (finding that ERISA did not preempt state law claim for wrongful inducement to participate in employee stock ownership plan); *see also Agee v. Armour Foods Co.,* 672 F.Supp. 1210, 1216 (W.D.Mo.1986) (noting that ERISA would not preempt state law misrepresentation claim that employer overstated the value of benefits to discourage employees from unionizing, if the claim were independent of plan administration).

For the same reason, Plaintiffs' state law claims would not have any significant economic impact on the ESOP itself. Indirect economic influences are insufficient to support preemption. *Wilson,* 114 F.3d at 719.

Finally, no specific ERISA provision strongly supports preemption of Plaintiffs' remaining state law claims, and the torts alleged represent a traditional exercise of state power. *Id.* at 719 (holding that Missouri's common law tort of negligent misrepresentation represented a "traditional state power.").

Thus, the only *St. Mary's* factor supporting preemption is the fact that this suit was brought against a "primary ERISA entity," an employer. This factor is insufficient to support preemption, especially because this Court begins "with the starting presumption that Congress does not intend to supplant state law." *Travelers,* 514 U.S. at 655, 115 S.Ct. 1671. The state law claims would not subject ERISA plan administrators to inconsistent state regulation, nor would they have an impact on Defendants' ERISA plan. These factors weigh more heavily in the Court's analysis than the fact that some of the Defendants in this case are employers. Accordingly, it is hereby

ORDERED that Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint (Doc. # 31) is GRANTED. Plaintiffs may file their Second Amended Class Action Complaint within fifteen (15) days of the date of this Order. It is further

ORDERED that Defendants' Motion to Dismiss (Doc. # 13) is GRANTED to the extent that Plaintiffs' state law claims related to the termination of the ESOP when the plant was sold are DISMISSED and Plaintiffs' claims that Defendants should have specifically explained how their ESOP benefits would be affected by the impending sale of the Sedalia plant and related facilities are also DISMISSED. It is further

ORDERED that in all other respects, Defendant's Motion to Dismiss (Doc. # 13) is DENIED. Plaintiffs' state law claims that Defendants should have disclosed the impending sale of the Sedalia plant and related facilities are NOT DISMISSED.