**Robert CHILDERS, Gerald Zeise, Robert Eisenhower, Daniel Fahlin, Dominic Jilek, Edward King, Segundo Velasquez, Robert Muchow, James Rollins, Ann Lawrence, Bea Nitz, Sharon Williams, Stephana Ruppert, Julie Clark, and Kenneth Przeslica, Plaintiffs,**

v.

**NORTHWEST AIRLINES, INC., a Minnesota corporation, Joseph W. Ettel, Michael D. Meyer, Guy K. Cook, George T. Wood, Marvin Sandrin, John L. Godlin, and Billy J. Pointer, Defendants.**

Civ. No. 4–87–193.

United States District Court,
D. Minnesota,
Fourth Division.

June 23, 1988.

David A. Singer, Singer & Singer, Ltd., Minnetonka, Minn., for plaintiffs.

Duane W. Krohnke, and Faegre & Benson, Minneapolis, Minn., for defendants.

## ORDER

DOTY, District Judge.

This matter is before the Court upon defendants' motion to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6). Alternatively, defendants seek summary judgment under Fed.R.Civ.P. 56. In the event they prevail on either motion, defendants have requested costs and attorney's fees in accordance with Fed.R.Civ.P. 11, 28 U.S.C. § 1927, and 29 U.S.C. § 1132.

## BACKGROUND

In 1983, in an effort to improve its weak financial position, Republic Airlines, Inc. ("Republic")[1] promised to establish a stock ownership program for its union and non-union employees in exchange for their consent to a 15 percent wage reduction. Republic would fund the program in large part by allocating 3,834,000 shares of common stock to be divided among all employees consenting to wage reductions.

To facilitate implementation of the program, Republic, early in 1984, negotiated a modification of its existing collective bargaining agreements with the International Association of Machinists and Aerospace Workers ("IAM"), the American Airway Supervisors Association ("AASA"); and the Air Line Employees Association ("ALEA"). Under these new agreements, the unions, on behalf of their respective members, agreed to wage concessions in exchange for Republic's promise to establish employee stock ownership plans ("ESOP") and contribute a specified number of shares of Republic common stock and other securities to trusts established under the stock ownership plans. Each of the collective bargaining agreements also provided that further terms of the ESOPs would be established for separate employee groups, and that any dispute concerning the terms of an ESOP would be resolved by a qualified arbitrator. Pursuant to the collective bargaining agreements, and after further negotiations with the IAM, AASA, and ALEA, Republic adopted four ESOPs[2], one for each union and one for salaried employees.

Plaintiffs in this action joined other Republic employees in consenting to wage reductions in exchange for the right to participate in the ESOP established for their particular employee group. Although Republic decreased their wages by 15 percent, each plaintiff was declared ineligible for further stock allocations after accepting promotions which resulted in a change in their union affiliation. After the promotion, each plaintiff was denied further participation in the ESOP established for their former union. Further, because they had been transferred after the cut-off date for participation in the ESOP established for the employee group they had joined as a result of the promotion, they were declared ineligible to participate in those plans. Essentially, plaintiffs "fell between the cracks" of the eligibility requirements for the various ESOPs and, according to plaintiffs, did not, therefore, receive all of the stock to which they are entitled.

The individual defendants are management employees of Republic who served as Republic-designated members of review boards established to review plaintiffs' grievances with respect to allocations of stock or are union officers who negotiated the collective bargaining agreements and

1. Several months after this action was filed, Republic Airlines, Inc. was merged into Northwest Airlines, Inc.. The defendant in this case will, however, be referred to as "Republic".

2. The four ESOPs are: (1) the IAM Republic Airlines Stock Ownership Investment Plan; (2) the Republic Airlines, Inc. Employee Stock Ownership Plan for Supervisors of Mechanical Personnel; (3) the Republic Airlines, Inc. Employee Stock Ownership Plan for Clerical, Office, Fleet and Passenger Service Employees; and (4) the Republic Airlines, Inc. Employee Stock Ownership Plan for Salaried Employees.

sat on review boards to consider plaintiffs' grievances. Plaintiffs commenced this action against Republic and the individual defendants after an unsuccessful attempt to obtain more stock by filing grievances with the review boards.

## DISCUSSION

In Count I of their Complaint, plaintiffs have alleged two causes of action arising under the Employee Retirement Income Security Act § 2 *et seq.*, 29 U.S.C. § 1001 *et seq.* ("ERISA"). First, plaintiffs assert a cause of action under 29 U.S.C. § 1132 arguing that the requirements established for participation in the allocation of stock under the ESOPs were arbitrary, capricious, and unreasonable. Second, plaintiffs assert that defendants have breached their fiduciary duties imposed by 29 U.S.C. § 1104. In Count II, plaintiffs allege causes of action for common law fraud and securities fraud in violation of state and federal law. Finally, in Count III, plaintiffs have asserted a cause of action for breach of contract.

### I. *Reasonableness of the Participation Requirements*

■ According to plaintiffs, the established requirements for participation in the various ESOPs are arbitrary, capricious, and unreasonable because continuously employed Republic employees have been deprived of the same opportunity to fully participate in the stock ownership program as was afforded to other Republic employees that accepted a wage reduction.

Courts have been reluctant to modify the eligibility requirements of ERISA-regulated plans that comply with ERISA's comprehensive standards, standards imposed by other federal laws such as nondiscrimination laws, and standards established by any pertinent collective bargaining agreement. *See United Mine Workers of America Health & Retirement Funds v. Robinson*, 455 U.S. 562, 574–76, 102 S.Ct. 1226, 1233–34, 71 L.Ed.2d 419 (1982) ("There is no general requirement that the complex schedule of the various employee benefits withstand judicial review on an undefined standard of reasonableness"); *Vorpahl v. Retirement Plan for Employees of Union Oil Company of California*, 749 F.2d 1266, 1270 (8th Cir.1984).

ERISA contains few provisions regulating the terms of benefit plans. It "imposes upon pension plans a variety of substantive requirements relating to participation, funding, and vesting. It also establishes various uniform procedural standards concerning reporting, disclosure, and fiduciary responsibility for both pension and welfare plans. It does not regulate the substantive content of welfare-benefit plans. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed. 2d 728 (1985) (citations omitted). Plaintiffs have not alleged that the terms or administration of the ESOPs are inconsistent with any standards established in ERISA. Nor have plaintiffs alleged that the terms or administration are inconsistent with any other federal law or with Republic's collective bargaining agreements with IAM, ALEA, or AASA. Therefore, based upon the reasoning and holdings of *Robinson* and *Vorpahl*, plaintiffs' cause of action under § 1132 concerning the ESOPs' participation requirements must be dismissed.

### II. *Breach of Fiduciary Duties*

Plaintiffs allege defendants have breached the fiduciary duties imposed by 29 U.S.C. § 1104 by establishing requirements for participation in the ESOPs that were not for the exclusive benefit of the participants and by failing to notify plaintiffs that accepting promotions could adversely affect their eligibility to participate in an ESOP.

#### A. Requirements Are Not for Participants' Exclusive Benefit

■ Liability under § 1104 can only be predicated on a finding of a breach of fiduciary duty. Before the Court can determine whether a fiduciary violated any duties, the Court must determine whether the individual was acting as a fiduciary, within the meaning of ERISA, while engaging in the disputed conduct. In *United Independent Flight Officers, Inc. v. United Airlines, Inc.*, 756 F.2d 1274 (7th Cir.

1985) the court held that because "neither a union or an employer is an ERISA 'fiduciary while, or merely because, it is negotiating the terms and conditions of future pension benefits ...' " there can be no liability for breach of fiduciary duty with regard to terms and conditions of pension benefit plans. *Id.* at 1280. Further, the "Department of Labor has taken the position that 'settlor functions' relating to the formation, design and termination of plans are not fiduciary activities." *Ogden v. Michigan Bell Telephone Co.*, 657 F.Supp. 328, 333 (E.D.Mich.1987) (citing 13 BNA Pension Rptr. 473 (1986)). Accordingly, plaintiffs' action for breach of fiduciary duty in connection with establishing participation requirements must be dismissed.

## B. Breach of Duty to Inform

■ Plaintiffs further contend that Republic, in its capacity as administrator of the ESOP, and the individual defendants as fiduciaries to the ESOPs, had a duty to inform its employees that accepting promotions could adversely affect their eligibility to participate in the ESOPs.

ERISA contains explicit disclosure requirements that obligate plan administrators to furnish participants and beneficiaries covered under a plan with: a summary plan description; an annual statement of a plan's assets, liabilities, receipts, and disbursements; and, upon request, a statement of a participant's or beneficiary's total accrued benefits and total accrued nonforfeitable pension benefits. 29 U.S.C. §§ 1021–1025. These narrow disclosure requirements, however, impose a duty to disclose only upon the plan administrator, in this case, Republic. That duty extends only to the plan's participants and beneficiaries and the plan administrator is required to disclose only the information specified in sections 1021 through 1025 or in a plan's trust agreement.

In this case, plaintiffs' complaint is that they were not warned that transfer from employment in an employee group covered under one ESOP to employment in an employee group covered by another ESOP could result in their ineligibility to receive stock from either ESOP. ERISA's express disclosure requirements, however, do not require the plan administrator to make such individualized disclosures. Under 29 U.S.C. § 1022(b) the summary plan description need only include a statement of a plan's requirements respecting eligibility for participation and benefits and a statement of the circumstances which may result in ineligibility for benefits. *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1472 (11th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987). Because there is no duty to furnish information to nonparticipants, and because each plaintiff received a summary plan description meeting those requirements for the ESOP under which that plaintiff was covered, Republic did not breach its express duty to disclose.

Several courts have examined ERISA's provision governing fiduciary duties, 29 U.S.C. § 1104, to determine whether a plan's fiduciary has a duty of disclosure beyond the express requirements of sections 1021 through 1025. Section 1104 requires plan administrators and fiduciaries to:

discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters, would use in the conduct of an enterprise of like character and with like aims.

Courts that have considered the applicability of this section to notice-related claims have held that § 1104 does not impose a fiduciary duty to provide individualized notice of the effect a particular event may have on a participant or beneficiary's eligibility to receive benefits. *Hopkins v. FMC Corp.*, 535 F.Supp. 235, 239 (W.D.N.C. 1982); *Schlomchik v. Retirement Plan of the Amalgamated Insurance Fund*, 502 F.Supp 240, 245 (E.D.Pa.1980), *aff'd,* 671 F.2d 496 (3rd Cir.1981). The rationale for

this holding is that fiduciaries should be able to rely upon the detailed and uniform guidance ERISA provides with regard to disclosure requirements rather than bearing the practically impossible burden of anticipating, and comprehensively addressing, the individualized concerns of thousands of employees, especially without notice of those concerns. *Hopkins*, 535 F.Supp at 239.

Because plaintiffs' claims for breach of fiduciary duty based upon defendants' failure to adequately inform has no basis in law, it must be dismissed.

### III. *Securities Fraud*

■ Plaintiffs allege that defendants' refusal to modify the terms of the ESOPs, despite their knowledge that those terms precluded plaintiffs' participation in any ESOP due solely to their acceptance of a promotion, constitutes a violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5, and Minn.Stat. § 80A.01.[3] Defendants have moved to dismiss these claims contending that plaintiffs have failed to sufficiently allege a cause of action under any of these provisions because plaintiffs were not "purchasers" of a "security".

Section 10(b) of the Securities Exchange Act of 1934 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest for the protection of investors.

15 U.S.C. § 78j(b).

Rule 10b–5, promulgated under § 10(b) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1986). Clearly, under these provisions the existence of a "purchase or sale" of "securities" are essential elements of a cause of action for securities fraud. Plaintiffs' participation in the ESOPs at issue in this case do not meet either of the requirements.

■ First, although the statutory definitions of a security are broad[4], encompassing more than ordinary stocks and bonds, the list of numerous examples in the statutory definition does not include ESOPs. Plaintiffs, however, contend that the

---

**3.** ERISA does not preempt state laws regulating insurance, banking, or securities. 29 U.S.C. § 1144(b)(2)(A).

**4.** Section 2(1) of the Securities Act, as amended, 15 U.S.C. § 77b(1), defines a "security" as "any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a 'security,' or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

The definition of a "security" in § 3(a)(10) of the Securities Exchange Act is virtually identical

ESOPs at issue in this matter constitute investment contracts [5]—one of the enumerated examples of a security—and are, therefore, securities. "To determine whether a particular financial relationship constitutes an investment contract, '[t]he test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others.'" *International Bhd. of Teamsters v. Daniel,* 439 U.S. 551, 558, 99 S.Ct. 790, 796, 58 L.Ed.2d 808 (1979) (quoting *SEC v. W.J. Howey Co.,* 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946)). In *Daniel* the Supreme Court held that under the *Howey* test, an employee's participation in a noncontributory, compulsory pension plan cannot be characterized as an investment contract. 439 U.S. at 559, 99 S.Ct. at 796.

When the plan is compulsory and noncontributory, the person claiming to be an investor has not "chose[n] to give up a specific consideration in return for a separable financial interest with the characteristics of a security." *Id.* Plaintiffs' participation in the ESOPs at issue in this case is, in a sense, compulsory. Once approved, modifications in the various collective bargaining agreements bound all union members regardless of whether they supported the modifications. Because of the collective decision to modify the compensation package, plaintiffs' participation in the ESOPs was not an individual affirmative decision to give up a particular consideration in return for a financial interest. Plaintiffs' participation was an incident of employment and their only choice would have been to forego the receipt of benefits entirely. *See Foltz v. U.S. News & World Report, Inc.,* 627 F.Supp. 1143, 1158 (D.D.C.1986).

Even if plaintiffs' participation could be characterized as an investment, it was not "in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *Daniel,* 439 U.S. at 561, 99 S.Ct. at 797. Although there is no dispute that the ESOPs may be characterized as common ventures, the Court cannot conclude that plaintiffs invested in the ESOPs with any expectation of profits arising from the management of the ESOPs. The ESOPs were funded only with Republic stock, which the ESOPs' managers were not free to trade. Thus, any appreciation in the value of the stock would not be attributable to the management of the ESOPs but to the financial recovery of Republic as a whole. *See Foltz,* 627 F.Supp. at 1158.

■ Second, plaintiffs' participation in the ESOPs cannot be characterized as a "purchase" of a security since participating employees did not furnish value. Plaintiffs argue that the wage concessions supply the consideration necessary to find a "purchase" of a security. In light of the fact that Republic demanded wage concessions in an attempt to preserve its cash resources and working capital, the Court must conclude that the ESOPs were primarily a method of deferring income, not a method of reducing wages to pay for stock. *See Bauman v. Bish,* 571 F.Supp. 1054, 1064 (N.D.W.Va.1983).

Without the purchase or sale of a security, there can be no cause of action for securities fraud pursuant to § 10(b) and Rule 10b–5. Further, because the elements of a claim pursuant to Minn.Stat. § 80A.01 are identical to the elements of a Rule 10b–5 claim, *see Austin v. Loftsgaarden,* 675 F.2d 168, 176 n. 15 (8th Cir.1982), plaintiffs' claim under the Minnesota statute is legally insufficient for the same reasons as their federal securities law claim.

and, for the purposes of this case, the coverage of the two Acts may be regarded as the same. *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 847 n. 12, 95 S.Ct. 2051, 2058 n. 12, 44 L.Ed.2d 621 (1975); *Tcherepnin v. Knight,* 389 U.S. 332, 342, 88 S.Ct. 548, 556, 19 L.Ed.2d 564 (1967).

**5.** Plaintiffs do not argue that they have purchased a "security" simply because the ESOPs were funded with shares of stock, as was successfully argued in *Harris v. Republic Airlines, Inc.,* No. 86–2147 (D.D.C. May 19, 1988) [available on WESTLAW, 1988 WL 56256]. Even if plaintiffs had made such an argument, however, the result in this case would not be altered because plaintiffs have failed to demonstrate that they "purchased" a security.

## IV. *Fraud and Breach of Contract*

■ As an alternative to their ERISA causes of action, plaintiffs allege causes of action for fraud and breach of contract. According to plaintiffs, they were fraudulently induced to accept a fifteen percent reduction of their wages. Plaintiffs further contend that, when Republic failed to adopt plan requirements that ensured equal participation by all Republic employees accepting wage reductions, Republic breached its contract with plaintiffs. Republic has moved for dismissal of these claims contending that they are preempted by ERISA.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). The Supreme Court has construed the words "relate to" expansively. In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Supreme Court held that a "law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* at 96–97, 103 S.Ct. at 2900. Plaintiff argues that their claims are not preempted because they are founded on acts preliminary to the adoption and creation of the ESOPs and, therefore, do not have any connection or reference to any employee benefit plan.

In an analogous case, the Court held that a claim for violation of an agreement to include the plaintiff in a severance plan was related to the ERISA-regulated severance plan and, therefore, preempted by ERISA. *Pane v. RCA Corp.*, 667 F.Supp. 168, 172 (D.N.J.1987). On the facts presented in this case, the Court must reach a similar conclusion. Plaintiffs do not contend that Republic breached its contract with plaintiffs or fraudulently induced them to agree to wage concessions because it failed to establish ESOPs or refused to give them the stock to which they are entitled under the terms of the ESOPs. Rather, the essence of their claim is that Republic breached its contract and fraudulently induced them to agree to wage concessions by failing to adopt plan requirements that would ensure equal participation in the ESOPs by all Republic employees. Such claims are "related to" a plan regulated by ERISA in the "broad common-sense meaning," *Shaw*, 463 U.S. at 97, 103 S.Ct. at 2900, of that phrase and are, therefore, preempted by ERISA. Accordingly, plaintiffs' common law causes of action for breach of contract and fraudulent inducement must be dismissed.

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Count I of plaintiffs' Amended Complaint is dismissed;

2. Count II of plaintiffs' Amended Complaint is dismissed;

3. Count III of plaintiffs' Amended Complaint is dismissed; and

4. Defendants' motion for costs and attorneys fees pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1927, and 29 U.S.C. § 1132 is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.