145 F.Supp.2d 1081 (2001)
Scott BARTON, et al., Plaintiffs,
v.
MERCANTILE BANK, N.A., et al., Defendants.
No. 4:00CV166 CDP.
United States District Court, E.D. Missouri, Eastern Division.
January 4, 2001.
*1082 Laura J. Kipnis, John G. Young, Jr., Julia Eileen Pusateri, Blumenfeld and Kaplan, St. Louis, MO, for Scott Barton, Michael Henritze, Scott Moore, Kevin Potter, Dean Shillito, plaintiffs.
Jennifer D. Baetje, Charles M. Poplstein, Partner, Thompson Coburn, St. Louis, MO, for Mercantile Bank, N.A., Firstar Corporation, Firstar Bank Missouri National Association fka Mercantile Bank National Association, defendants.

MEMORANDUM AND ORDER
PERRY, District Judge.
Five former employees of Mercantile Bank bring this action to collect severance benefits allegedly promised by Mercantile to employees in the event they were discharged in the 1999 merger between Mercantile and Firstar Corporation. The fourcount complaint names Mercantile and Firstar as defendants, and alleges claims under ERISA and common law theories. Defendants have moved to dismiss the complaint. I conclude that the "InfoComm" relied on by plaintiffs is not an ERISA plan, and that plaintiffs have not stated a claim for equitable estoppel. Therefore, I will grant defendants' motion to dismiss as to Counts I, II, and III. I will deny the motion without prejudice as to Count IV, and will grant plaintiffs leave to amend their complaint, if they wish to do so.

I. Facts

Plaintiffs' factual allegations, taken as true for purposes of this order, are as follows: Plaintiffs Scott Barton, Michael Henritze, Scott Moore, Kevin Potter, and Dean Shillito worked in Mercantile's Fixed Income Sales and Trading Division until their discharge on August 6, 1999. Plaintiffs performed duties associated with fixed income sales and trading, and were compensated solely through commissions and incentives.
In April of 1999, Mercantile and Firstar announced their planned merger. Beginning in May of 1999, Mercantile and Firstar jointly issued to their employees a series of documents containing informational updates on the merger. Plaintiffs attached two such documents to their complaint. These documents, called "InfoComms" follow a conversational, question-and-answer format and are approximately three pages long. The first InfoComm, dated May 3, 1999, discusses the terms of the merger agreement, the planned managerial structure of the new entity, and other matters. The second InfoComm, dated June 11, 1999, addressed the severance benefits that would be available to employees discharged as a result of the merger. The June 11 InfoComm provides in part:
Q: If I am not offered a position in the new Firstar organization, will I be provided severance benefits?
A: A brief summary of the severance program applicable to this merger is outlined below. Severance is offered pursuant to a Severance Agreement for individuals who are not offered a comparable position in the new organization, and who meet the other eligibility requirements for severance benefits described later in this InfoComm.
Base Severance:
2 weeks pay per year of service (prorated for partial years of service)
 Minimum payment: 4 weeks for nonexempt
 employees
 8 weeks for exempt
 employees
*1083
 Maximum payment: 26 weeks
Employees can select either salary continuation or a lump sum payment. If severance is received through salary continuation, any remaining balance would be paid out in lump sum when the employee secures other employment.[1]
The only eligibility criteria for severance benefits set forth in the June InfoComm state that the employee must work through his release date, must not have rejected a comparable position within the new organization, and must not have accepted any other position within the new organization. In reliance on the severance benefits promised in the June InfoComm, Plaintiffs continued to work for Mercantile rather than seeking other employment when they learned of the merger.
On August 4, 1999, Mercantile informed plaintiffs that they would be discharged on August 6. In addition, Mercantile told plaintiffs that they were not eligible for severance benefits because they were compensated through commissions or incentives. Plaintiffs were discharged on August 6, and Mercantile did not offer them comparable positions within the new entity. On September 21, plaintiffs sent a demand letter to Mercantile and Firstar claiming that they were entitled to severance benefits under the terms of the June InfoComm. On October 5, Mercantile informed plaintiffs that their demand letter had been forwarded to the administrator of Mercantile's "Special One-Time 1999 Severance Plan" (the "One-Time plan"). Plaintiffs then received from the plan administrator a copy of the One-Time plan. This was the first time plaintiffs had been informed that the One-Time plan existed. The One-Time plan contains similar terms as the June InfoComm. Under the One-Time plan, however, employees who are paid solely on a commissions or incentive basis are not entitled to severance benefits. Moreover, unlike the InfoComm, which provided that severance benefits would be based on "pay," the One-Time plan bases severance benefits on "salary," which the plan defines to exclude commissions and incentives. The plan document provides that the One-Time plan became effective as of June 4, 1999.

II. Discussion

Plaintiffs argue that the June InfoComm was an ERISA plan. Count I of the complaint alleges that ERISA entitles plaintiffs to benefits under the InfoComm's terms. Count II alleges that defendants breached their fiduciary duty under ERISA with respect to the purported plan embodied in the InfoComm. Counts III and IV allege claims for estoppel and breach of contract, respectively. Defendants contend that plaintiffs' complaint should be dismissed because the InfoComm was not a plan under ERISA, and because plaintiffs have failed to state a claim for federal common law estoppel. I agree and will dismiss Counts I, II, and III. I will deny the motion to dismiss Count IV without prejudice, and give plaintiffs an opportunity to amend their complaint.

A. Claim for ERISA Benefits

Plaintiffs sue under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), for the severance benefits described in the June InfoComm, arguing that the InfoComm is a "welfare benefit plan" as defined by ERISA. Defendants contend that the InfoComm is not an ERISA plan, and that plaintiffs therefore have no ERISA claim for benefits under the InfoComm. *1084 I agree with defendants, and will therefore dismiss count I of plaintiffs' complaint.
A finding that the plan is an "ERISA plan" is a jurisdictional requirement for claims under § 1132(a)(1)(B). See, e.g., Kulinski v. Medtronic Bio-Medicus, Inc., 21 F.3d 254, 256 (8th Cir.1994). ERISA defines "employee welfare benefit" to include "any plan, fund, or program ... to the extent that such plan, fund, or program was established ... for the purpose of providing ... through the purchase of insurance or otherwise ... any benefit described in section 186(c) of this title." § 1002(1)(B).[2] Several Eighth Circuit decisions have addressed the degree of formality required of an ERISA plan. In general, for a plan "[t]o qualify as a `plan, fund, or program' under ERISA, a reasonable person must be able to ascertain [its] intended benefits, a class of beneficiaries, source of financing, and procedures for receiving benefits." Bannister v. Sorenson, 103 F.3d 632, 636 (8th Cir.1996) (quoting Northwest Airlines, Inc. v. Federal Ins. Co., 32 F.3d 349, 354 (8th Cir.1994)). A different rule applies, however, when the employer has addressed the subject matter of the purported plan in an earlier plan. Oral or informal communications between an employer and an employee do not constitute an ERISA plan if enforcing the communication as a plan would have the "same effect" as modifying an existing plan. See Anderson v. Resolution Trust Corp., 66 F.3d 956, 960 (8th Cir.1995).
Defendants argue, and Plaintiffs do not dispute, that the One-Time plan was an ERISA plan that addressed severance benefits for Mercantile employees discharged due to the merger. I find that the One-Time plan unambiguously states that commissions and incentives do not factor into the calculation of severance benefits. Plaintiffs' § 1132(a)(1)(B) claim is premised on the argument that the June InfoComm entitles employees to severance benefits computed based on their total compensation, including commissions and incentives. Enforcing the InfoComm as a separate plan would thus have the "same effect" as modifying the earlier plan. I also find that the InfoComm was an informal communication for purposes of Anderson. The InfoComm takes the form of a short employee newsletter. It follows a question-and-answer format and describes itself as a "brief summary" of the severance benefits Mercantile employees would receive if terminated in the merger. I am thus constrained by Anderson to conclude that the InfoComm is not an ERISA plan.
Plaintiffs suggest in their complaint that they were not covered by the One-Time plan. They also take pains to point out that Mercantile did not inform them that the One-Time plan existed until several months after their discharge. Neither of these allegations is relevant to the issue of whether the InfoComm constitutes a plan. While there may be policy reasons for departing from Anderson in cases in which the employer has not properly disclosed the existence of the earlier plan, I cannot simply decline to follow binding precedent. Moreover, the complaint suggests that Mercantile distributed the InfoComm to employees who were covered by the OneTime plan. Under Anderson, the InfoComm is clearly not a separate plan with respect to those employees. I am unwilling to conclude that a document can constitute a "plan" with respect to some employees but not with respect to others. I will therefore dismiss count I.

*1085 B. Breach of Fiduciary Duty

My conclusion that the June InfoComm is not an ERISA plan forecloses plaintiffs' claim for breach of fiduciary duty. A fiduciary under ERISA "must be someone acting in the capacity of manager, administrator, or financial adviser to a `plan.'" Pegram v. Herdrich, 530 U.S. 211, 120 S.Ct. 2143, 2151, 147 L.Ed.2d 164 (2000). See 29 U.S.C. 1002(21)(A)(i)-(iii). A claim for breach of fiduciary duty must therefore be based on wrongful conduct committed in relation to an identified ERISA plan. In this case, the complaint limits plaintiffs' breach of fiduciary duty allegations to actions involving the purported plan embodied in InfoComm. Moreover, plaintiffs' brief indicates their desire to confine themselves to the theory that Mercantile and Firstar breached their fiduciary duty with respect to the InfoComm. As the InfoComm is not a plan, I will dismiss count II.

C. Estoppel

Plaintiffs also allege that defendants are estopped from asserting that the One-Time plan limits their right to severance benefits, and that defendants breached a unilateral contract formed when plaintiffs continued to work as consideration for the InfoComm's benefits. Plaintiffs argue at length that they have stated a claim for estoppel under federal common law. For the reasons that follow, I conclude that plaintiffs have not stated a claim for estoppel under federal common law. I will therefore dismiss Count III.
The Eighth Circuit has recognized only one use of federal common law estoppel in ERISA cases: a plaintiff may invoke the doctrine of estoppel in arguing for a plausible interpretation of an ambiguous plan term. See Slice v. Sons of Norway, 34 F.3d 630, 634-35 (8th Cir.1994) (indicating that federal common law estoppel could be used where plan term was ambiguous and where plaintiff's employer led plaintiff to believe that the plan had the meaning urged by plaintiff). Conversely, the Eighth Circuit has flatly rejected efforts to use a federal estoppel theory to modify the unambiguous terms of an ERISA plan. See Wilson v. Prudential Ins. Co. of America, 97 F.3d 1010, 1014 n. 2 (8th Cir.1996); Fink v. Union Cent. Life Ins. Co., 94 F.3d 489, 492 (8th Cir.1996); Slice, 34 F.3d 630, 634-35. Plaintiffs do not allege that the One-Time plan is ambiguous. It would not avail them to do so, because they do not base any of their claims on the terms of that plan. Rather, they rely on the doctrine of estoppel in arguing that the One-Time plan should be ignored. I believe that permitting this use of the doctrine would allow plaintiffs to circumvent the rule that a federal estoppel claim cannot be used to modify the terms of an existing plan. Cf. Anderson, 66 F.3d 956, 960 (holding that employer's oral statements did not constitute a separate ERISA plan because recognizing the communications as a separate plan would have the effect of modifying an existing plan). Even assuming that plaintiffs' argument differs in substance from the argument rejected in Slice, the Eighth Circuit has never endorsed the plaintiff's proposed use of a federal estoppel theory, and I decline to expand upon the precedent cited above.

D. Breach of Contract

Count IV, for breach of contract, arises under state law. This claim may well be preempted by ERISA § 514. I need not decide this complicated issue at this time, however. Plaintiffs have thus far restricted all their claims to seeking recovery under the June InfoComm. Defendants apparently now concede that plaintiffs are covered by the One-Time Plan. Given my rulings that the InfoComm is not an ERISA plan, and given the defendants' apparently new position that plaintiffs are *1086 covered by the One-Time plan (even though defendants never disclosed its existence until plaintiffs threatened suit), plaintiffs may wish to amend their complaint. I choose not to decide whether the breach of contract claim is preempted until all amendments have been made. I caution both parties that the preemption issue, if it must ultimately be decided, is more complicated than their briefs reflect. If the issue is re-raised after amendment, I will expect more thorough briefing from both parties.
Accordingly,
IT IS HEREBY ORDERED that defendants' motion to dismiss [# 12] is granted as to Counts I, II, and III, and is denied without prejudice as to Count IV.
IT IS FURTHER ORDERED that plaintiffs shall, no later than March 4, 2001, either file an amended complaint or file a statement that they do not wish to amend but wish to proceed on Count IV as it is now pleaded.
All other provisions of the Case Management Order remain in full force and effect, including the referral to mediation, which order is also entered today.
NOTES
[1] The InfoComm similarly details other benefits relating to severance, including "bridge payments" for employees with fifteen or more years of service who are unable to attain other employment within the salary continuation period.
[2] This definition includes unfunded severance benefit plans. See, e.g., Wallace v. Firestone Tire & Rubber Co., 882 F.2d 1327, 1329 (8th Cir.1989).